NEW YORK,
May. 1816.

PAWLING
v.
BIRD's EX'ORS.

PAWLING, AND EUNICE, *his wife, late Eunice Stanton, against*
WILLSON & SMITH, *executors of* BIRD.

A judgment of a court in another state is to be considered as a foreign judgment, in every respect except in the mode of proving it, and is only *prima facie* evidence of a debt.

And such judgment, when founded on proceedings by attachment, against the goods of the defendant, he not being within the jurisdiction of such state, is not even *prima facie* evidence of a debt.

A *divorce* of persons domiciled in this state, decreed in another state, is invalid here.

But if the parties, although domiciled here, were married in the state in which the divorce was decreed, whether it might not, under those circumstances, be valid? *Quære.*

But, admitting such decree to be valid, if it made no provision with regard to the children of the marriage, and there was no agreement between the parties as to their maintenance, the mother cannot, (the guardianship of the children having been decreed to her,) *it seems*, support an action against the father for their maintenance: she can, at most, sue him for *contribution* only.

THIS was an action of *debt*, on a judgment recovered in the superior court of the state of *Connecticut*, by *Eunice Stanton*, before her marriage with the plaintiff, *Pawling*, against the defendants, executors of *John Bird*, deceased. The defendants pleaded *non detinet*, accompanied with notice that they intended to insist upon the statute of limitations, in bar of the plaintiff's action. The cause was tried at the *Albany* circuit, in *April*, 1815, before Mr. *J. Platt.*

On the trial, the plaintiffs produced, in evidence, a record of a judgment in *Connecticut*, duly authenticated, and commencing with the writ, in which was included the declaration, as follows : " To the sheriff of the county of *Litchfield*, &c. &c. &c. By authority of the state of *Connecticut*, you are hereby commanded to summon *Ebenezer Willson* and *Benjamin Smith*, both absent and absconding debtors, out of this state, to parts unknown to the plaintiff, executors of the last will and testament of *John Bird*, esq., late of *Troy*, in the county of *Rensselaer*, and state of *New-York*, deceased, to appear before the court of common pleas, to be holden at *Litchfield*, within, and for the county of *Litchfield*, aforesaid, on the fourth *Tuesday* of *September*, A. D., 1807, then and there to answer unto *Eunice Stanton*, of *Colchester*, in the county of *Chittenden*, and state of *Vermont*, in a plea, that to the plaintiff, the defendants, in said capacity, render the sum of nine hundred dollars, which, to the plaintiff, the said *John*, deceased, while in life, justly owed, by book, to balance book accounts, as by the plaintiff's book, ready in court to be produced, fully appears ; which debt the defendants have never paid, though often requested and demanded, which is to the damage of the plaintiff the sum of one thousand dollars, and for the recovery thereof, with just costs, the plaintiff brings this suit.

" Hereof fail not, and of this writ, and of your doings thereon, make due return according to law. And you are, at least fourteen days before the sitting of the said court, to leave a true and attested copy of this writ with *Uriel Holmes*, esq., of

said *Hartland,* and a like copy with *Uriel Holmes,* jun., esq., of said *Litchfield,* who are debtors to the defendants, in their said capacity; and, also, a like copy with *Seth P. Beers,* esq., of said *Litchfield,* who is both debtor and attorney to the defendants, in their said capacity.

" Dated at *Litchfield,* the 2d day of *April,* A. D. 1807."

*Seth P. Beers* appeared for the defendants, and pleaded, and judgment having been given in the court of common pleas of *Litchfield* county, for the defendants, on a demurrer to the plaintiff's declaration; and the cause being removed, by appeal, into the supreme court for the county of *Litchfield,* and an issue of fact being joined, a verdict was found for the plaintiff, and judgment was thereupon rendered, that " the plaintiff shall recover, of the goods and estate of the said *John Bird,* deceased, in the hands of his executors, the said sum of six hundred and seventeen dollars and twenty-one cents, damages, and her costs of suit, taxed at thirty-five dollars and sixty-five cents, and that the execution may issue accordingly."

The plaintiffs proved, that, after the recovery of the above judgment, and before the commencement of the present suit, *Eunice Stanton* intermarried with the plaintiff, *Pawling.* The plaintiffs further proved, that about two years previous to the trial, *Smith,* one of the defendants, conversed with the witness, *R. M. Livingston,* respecting the judgments recovered by Mrs. *Pawling,* in *Connecticut,* and stated, that since the marriage of the plaintiffs, *Pawling* had called on him, *Smith,* for payment, and that he was willing to pay, but was apprehensive that it would not protect him in case there should be a failure of assets; that it had been proposed to arbitrate, but he had, for the same reason, declined it; an amicable suit was proposed, as the witness understood: the witness further testified, that *Smith* appeared anxious to make payment, but for the reason assigned; and that it was not pretended that any payment had been made on either of the said judgments. Here the plaintiffs rested their cause, and the judge ruled that the evidence was sufficient to take the case out of the statute of limitations.

The defendants produced in evidence another exemplification of the record, in the suit in *Connecticut,* between them and *Eunice Stanton,* containing, not only all that was comprised in the copy which was given in evidence by the plaintiffs, but, also, a variety of additional matter, among which was the exe-

cution issued on the judgment, to levy the amount thereof on the money, goods, chattels, or lands, of *John Bird*, deceased, in the hands of his executors, the defendants. To this execution the sheriff returned, that he had made demand of *Uriel Holmes*, for money, or goods, in his hands, belonging to the defendants, executors of *John Bird*, to satisfy the execution and his fees, but that he refused showing any. And a return was made of a like demand on, and refusal by, *Uriel Holmes*, jun., and *Seth P. Beers*. The record likewise comprised a statement of the evidence, being, apparently, a bill of exceptions taken at the trial of the cause. The bill of exceptions set forth, in the first place, an account, to recover the amount of which the action was brought, in which the executors of *John Bird* were charged with various sums of money for the nursing, boarding, clothing, &c., of *William* and *Maria*, two infant children of the said *John Bird*, the total amount of which was six hundred and seventeen dollars and twenty-one cents. It stated, in the next place, that it was agreed, on the trial, that the said *Eunice* was married to *Bird* on, or about, the 4th of *October*, 1789, and continued to be his lawful wife until on, or about, the last day of *May*, 1797. The bill of exceptions further set forth a decree of the general assembly of the state of *Connecticut*, passed at a general assembly, held on the 2d *Thursday* of *May*, 1797. This decree recited the petition of the plaintiff. *Eunice*, in which a divorce was prayed for, on the ground of the ill-treatment of her by her husband, *John Bird ;* it then recited as follows : " That the said *John* hath been served with a copy of said petition, according to the custom and usage of the said assembly, and the petitioner, and the respondent, having severally appeared, by their counsel, learned in the law, and having been, with their proofs, fully heard by this assembly, on the merits of the said petition, this assembly do find the facts stated in said petition to be true ; and it being proved to this assembly, that the said *Eunice*, since the date of said petition, hath been delivered of a son and daughter, which are now remaining with said *Eunice ;* and it also being made to appear to this assembly, that the son of the said *Eunice* and *John*, in said petition mentioned," (born previously to the commencement of these proceedings,) " hath been, since the date of said petition, forcibly wrested by the said *John* from the said *Eunice*, and carried to parts unknown to said *Eunice ;*" Then followed the decree, in these words : " Therefore, it is resolved, by this as-

NEWYORK,
May, 1816.

PAWLING
v
BIRD's Ex'oa

..sembly, that the said *Eunice* be, and she is hereby divorced from the said *John.* And it is further resolved, by this assembly, that the said *Eunice* be, and she is hereby constituted sole guardian of said son and said daughter, which have been, as aforesaid, born since the date of said petition, until they shall, respectively, attain the age of twenty-one years. And it is further resolved by this assembly, that the said *John Bird* shall, within six months from the first day of *June,* in the year of our Lord one thousand seven hundred and ninety-seven, pay to the said *Eunice* three thousand dollars, as her part and portion of the estate of the said *John,* in lieu of all claims of dower." The bill of exceptions further stated, that it was agreed that *Eunice* accepted of the guardianship of the infants mentioned in the account, who were the same children as were mentioned in the decree, and are the children of *John Bird* and *Eunice;* that the whole of the account accrued for supporting said children, which, it was agreed, was furnished, and without any request from *John Bird,* who never made an express promise to pay the same, while they lived with the plaintiff. The bill of exceptions further stated a release, executed by the plaintiff to *John Bird,* which, after reciting the decree of the general assembly, stated, that the said *Eunice Bird,* " For the consideration of fifteen hundred dollars, secured, to her full satisfaction, by four promissory notes, executed and delivered to her by Doctor *Seth Bird,* all bearing date, &c., and for the following sums, &c., did, by these presents, release, and for ever discharge, the said *John Bird* from all claims, demands, and dues, from, or by force of the above-recited decree."

The defendants gave in evidence the exemplification of another record, which commenced with a *scire facias,* directed " to the sheriffs of the respective counties of *Hartford* and *Litchfield*," &c., and proceeded as follows : " Whereas *Eunice Stanton,* of *Colchester,* in the state of *Vermont,* brought her action to, and before, the court of common pleas, holden at *Litchfield,* within and for the county of *Litchfield,* on the fourth *Tuesday* of *September,* in the year of our Lord one thousand eight hundred and seven, against *Ebenezer Willson* and *Benjamin Smith,* both absent and absconding debtors, out of this state, to parts to the plaintiff unknown, as they were, and are, executors of the last last will and testament of *John Bird,* esq., late of *Troy,* in the county of *Rensselaer,* in the state of *New-York,* de-

ceased, by writ, dated the second day of *April*, in the year of our Lord one thousand eight hundred and seven, which writ, according to the command therein given, was duly served on *Uriel Holmes*, esq., of *Hartland*, in said *Hartford* county, and on *Uriel Holmes*, jun., of *Litchfield*, in said *Litchfield* county, who were, and are, debtors, and indebted to the said *Ebenezer* and *Benjamin*, in their said capacity; and, also, on *Seth P. Beers*, esq., of said *Litchfield*, who then was, and still is, both attorney and debtor to the said *Ebenezer* and *Benjamin*, in their said capacity, which action, by continuance and appeal, came duly to and before the superior court, holden at *Litchfield*, within and for the county of *Litchfield*, on the first *Tuesday* of *February* last past, when and where the parties appeared; and, on trial duly had, the said *Eunice* did recover judgment thereon against the said *Ebenezer* and *Benjamin*, by the consideration of said court, for the sum of six hundred and seventeen dollars and twenty-one cents, debt, and for the sum of thirty-five dollars and sixty-five cents, costs of suit, as appears of record; which writ, the return of service thereon, and the record of said judgment of said superior court, and of the said court of common pleas, are in the words and figures following, to wit :". (Here the whole of the record, including the execution and return in the suit of *Eunice Stanton* against the defendants, as before stated, are set forth *in hæc verba :* the *scire facias* then proceeds :) "And the said *Ebenezer* and *Benjamin* were, at the said times of the said dates of the said writ, and of the said endorsements, absent and absconding debtors out of this state; and the said *Uriel Holmes*, esq., and *Uriel Holmes*, jun., esq., were jointly indebted to the said *Ebenezer* and *Benjamin*, as executors as aforesaid, in and by a debt due to the said *John*, while in life, of more than two thousand dollars, which still remains unpaid; and the said judgment still remains in force and unsatisfied. The said *Eunice*, therefore, says, that the said judgment ought to be affirmed against the said *Uriel* and *Uriel*, jun.; and that she ought to have judgment, and a writ of execution, against the said *Uriel Holmes*, esq., and *Uriel Holmes*, jun., esq., for the amount of said judgment, and the fees of service thereon, for the detention thereof. These are, therefore, by authority of the state of *Connecticut*, to command you to cause the said *Uriel Holmes*, esq., and *Uriel Holmes*, jun., esq., &c., to know that they appear before the superior court, &c., to show cause, &c," The defend-

ants, *Uriel Holmes*, and *Uriel Holmes*, jun., appeared, by their attorney, *Seth P. Beers*, and pleaded, "that neither they, nor either of them, were, at any of the times stated, debtors of the said *Ebenezer* and *Benjamin*, in their said capacity, in and by a debt due to the said *John*, while in full life, to the amount of more than two thousand dollars, nor in any sum whatever, nor were the said *Ebenezer* and *Benjamin*, in fact, at any of the times stated in the said writ, absent and absconding debtors out of this state, as the plaintiff, in her writ, hath alleged, as on file;" issue being joined on this plea, the court were of opinion, and found, that the defendants were not " debtors of the said *Ebenezer* and *Benjamin*, in their said capacity, in and by a debt due to the said *John*, while in full life, to the amount of more than two thousand dollars, nor in any sum whatever; nor were the said *Ebenezer* and *Benjamin*, at any of the times stated in said writ, absent and absconding debtors out of this state, as the plaintiff in her writ hath alleged. Whereupon it is considered and adjudged, that in this case the defendants shall recover their costs," &c.

The record of the *scire facias* further stated, that it was agreed by the parties thereto, that *Willson* and *Smith* had never resided in *Connecticut*, but had always resided at *Troy*; that *J. Bird* had, for many years previous to his decease, resided at *Troy*, where he died; that his will had been proved in *New-York*, but never in *Connecticut*; and that it was proved that *Uriel Holmes*, and *Uriel Holmes*, jun., were indebted to the amount of more than two thousand dollars to *Seth Bird*, of whom *John Bird* was the residuary legatee and sole executor.

The defendants, also, gave in evidence an exemplification of an act of the state of *Connecticut*, enacted in *May*, 1726, entitled " *An act for the recovery of debts out of the estate or effects of absent or absconding debtors;*" and of certain acts supplementary thereto. The material parts of the act of 1726 are as follows: " *Be it enacted by the governor and council and house of representatives in general court assembled,* That it shall and may be lawful for any creditor to cause the lands, goods, or effects of his absent or absconding debtors, not residing within this state, to be attached, in whose soever hands or possession the same are or may be found: And the attaching of any part thereof shall secure, and make the whole that is in such person's hands liable, in the law, to respond the judgment to be recovered upon

such process, and shall be subject to be taken in execution for satisfaction thereof, as far as the value thereof will extend; and the person in whose hands any such lands, goods, or effects are, shall, accordingly, expose the same.

" 2. That when no lands, goods, or effects, of any absent or absconding debtor, in the hands of his attorney, factor, agent, or trustee, shall be exposed to view, or can be found or come at, so as to be attached, it shall and may be lawful for any creditor to bring his action against his absent or absconding debtor, for the recovery of his dues; in which case the creditor, by some proper officer, shall leave an attested copy of his writ, at least fourteen days before the time of trial, with such absent or absconding debtor's attorney, factor, agent, or trustee, or at the place of his or their usual abode; which service shall be a sufficient citation for the creditor to bring forward his action to trial, unless the debtor be an inhabitant of this state, or hath for some time dwelt therein; in which case a like copy shall be left by such officer at the dwelling house, lodging, or place of his last or usual abode.

" 3. That such attorney, factor, agent, or trustee, upon his desire, shall be admitted to defend his principal, in such suit, through the course of law, according to the nature of the action. But if the debtor be not in this state, and no attorney, factor, agent, or trustee, appear, to defend in the suit, the court shall continue the action to the next court, and then, if need be, shall continue the same once more to the next court, (that such attorney, &c., may have an opportunity to notify his principal,) and then, without special matter alleged and allowed in bar, or abatement, the action shall come to trial, and judgment be rendered for the plaintiff, and all the goods or effects which are in the hands of such attorney, factor, agent, or trustee, to the value of such judgment, (if so much there be,) shall be liable, and subjected to execution granted upon such judgment for, or towards, the satisfying the same; and from the time of serving the writ or summons as aforesaid, shall be liable, and be secured in law in the hands of, and may not, otherwise, be disposed of by such attorney, factor, agent, or trustee.

" 4. And if such attorney, factor, agent, or trustee, after the time of his being served with a writ or summons, as aforesaid, taken out against his principal, (being an absent or absconding debtor,) shall transfer, remit, dispose of, or convert any of the

NEWYORK,
May, 1816.

PAWLING
v.
BIRD'S EX'ORS.

goods or effects of such debtor, in his hands, at the time of such service, within what shall satisfy the judgment given as aforesaid, or that shall not discover, expose, or subject the goods or effects of such debtors, in his hands, to be taken in execution for and towards the satisfying the judgment so far, as what in his hands or possession will extend, shall be liable to satisfy the same of his own proper goods or estate, as much as if it were his own proper debt; and a writ of *scire facias* may be taken out from the clerk of the court where the judgment was given, to be served on such attorney, factor, agent, or trustee, requiring him to appear before such court, and to show cause, if any he have, to the contrary thereof; and upon default of appearance of such attorney, factor, agent, or trustee, or refusal to disclose, upon his oath, (which oath such court is authorized to administer,) what goods or effects of the debtor are, or were, in his hands or possession, then judgment shall be entered up against him of his own proper goods or estate, as though it was his own debt, and execution shall, in usual form of law, be granted thereon.

" 5. That the debts due to any such absent or absconding debtor shall be considered as his effects, in the hands of the person from whom the same are due, who shall be considered as his agent or trustee, and be obliged to account for the same under oath; and recovery may be had against him in the same manner as for goods or chattels of such absconding debtor."

The first section of the additional act, of *October*, 1807, is as follows : " That, whenever a *scire facias* shall be brought on said statute, to recover a debt due to, or the goods and effects of, an absent or absconding debtor, in case any person or persons, either jointly or severally, claim such debt, as assignee or assignees thereof, or such goods or effects, as owner or owners thereof, the defendant, in such *scire facias*, having notice or knowledge of such assignment, ownership, or claim, may give notice, in writing, signed by proper authority, and duly served, to such claimant or claimants, or his, her, or their attorney, that such *scire facias* is pending, and that such claimant or claimants may, if he, she, or they, see cause, appear and defend against such *scire facias*, and thereupon, unless such claimant or claimants shall, within such time as the court, before whom the *scire facias* was pending, may direct, give to such defendant, sufficient security to the approbation of such court, to indemnify him against all costs arising in such *scire facias*, such defendant may suffer judgment by default, or otherwise," &c.

NEWYORK,
May, 1816.

PAWLING
v.
BIRD'S EX'ORS.

The defendants also gave in evidence, by consent, the deposition of *Seth P. Beers*, who stated, that *Uriel Holmes*, and *Uriel Holmes*, jun., on being warned on the *scire facias* against them, gave notice thereof to the deponent, who was the agent of the defendants, *Willson* and *Smith ;* that the deponent, in conformity to the provisions of the statute of *October*, 1807, above mentioned, one of the acts, in addition to the act respecting absent and absconding debtors, gave security, on behalf of *Willson* and *Smith*, to *Uriel Holmes*, and *Uriel Holmes*, jun., to indemnify them against the costs which had accrued, or might accrue, on the writs of *scire facias*, which security they accepted ; and thereupon the deponent appeared, and was admitted, by the court, as attorney for *Willson* and *Smith*, to defend in the proceedings on *scire facias*, in the names of *Uriel Holmes*, and *Uriel Holmes*, jun. ; and that a defence was accordingly made, and judgments were rendered in favour of the defendants on said writs of *scire facias ;* that the defences so made, were made solely for the benefit, and in behalf of *Willson* and *Smith ;* and that the deponent appeared as attorney, and defended, by their request.

A verdict was, then, taken for the plaintiffs, for the amount of the debt and costs recovered by the judgment in *Connecticut*, with interest, subject to the opinion of the court, on a case, containing the facts above stated.

*Woodworth*, for the plaintiffs. Though the process in the original suit, in *Connecticut*, should be regarded as a nullity, yet, as the defendants appeared and contested the cause, through all its stages, they must be concluded by the judgment. No doubt, the statute of limitations may be pleaded in bar to an action of debt on a judgment given in another state ; but a subsequent acknowledgment, or admission of the debt, is sufficient to take the case out of the statute.＊

＊ *Sluby* v. *Champlin,* 4 *Johns. Rep.* 469.

The decision of the cause, on a motion for a new trial in the supreme court of *Connecticut*, will be found in 3 *Day's Reports*, 137. It cannot be said that the judgment was unduly or irregularly obtained. This court, in *Taylor* v. *Bryden,*† have said, that a judgment in another state is presumptive evidence of a just demand, and it is incumbent on the defendant, in an action on the judgment here, to impeach its justice, by positive proof of its irregularity or unfairness. The case of *Kilburn* v. *Woodworth,*‡ may be cited for the defendants, but it is not in

† 8 *Johns. Rep.* 179.

‡ 5 *Johns. Rep.* 37.

point; for there the defendants never had any notice whatever of the suit, and were out of the state where the judgment was given. Here, the defendants regularly appeared and went to trial; and it is a settled principle, that a defendant cannot take advantage of any defect or irregularity in the process, after he has appeared and pleaded. By appearing, he admits the competency of the plaintiff, the regularity of the process, and the jurisdiction of the court.*

The case of the plaintiffs against the *garnishees*, in which they failed, is reported in 4 *Day's Rep.* 87.

NEW YORK,
May, 1816.

PAWLING
v.
BIRD'S EX'ORS.

* 1 *Tidd's Pr.*
90. 572. 1 *Str.*
155. 1 *East,* 78.

*Henry,* and *Buel,* contra. In the suit against the *garnishees,* the supreme court of errors, in *Connecticut,* decided, that the process, by *foreign attachment,* as it is called, could not be sustained against executors or administrators, to recover a debt due from their testator or intestate. They refused to enforce the original judgment.

1. We contend, that the statute of limitations is a bar in this case;† and that there is not sufficient evidence to take it out of the statute. If all the words of *Smith,* as stated by the witness, *Livingston,* are taken together, and fairly understood, they do not amount to an admission of the debt, but merely of the existence of certain judgments in *Connecticut.* A person acting in a representative capacity, does not stand in the same situation as a person acting in his own right. He has no personal interest in the question. He may be unable to decide, whether he ought to pay or not; and may very well say, "I would pay the debt, if I could do it properly and safely."

There ought to be evidence sufficient to authorize a jury to infer a promise to pay.‡ The statute of limitations is a very beneficial statute, and ought to be favoured. Courts have, certainly, gone too far, in taking cases out of the statute.§

2. The judgments in *Connecticut* were *in rem.* They were founded on proceedings in the nature of a *foreign attachment,* authorized by certain statutes of that state, the first of which was passed in 1726. The object of those statutes is to enable a creditor to obtain execution against the goods or property of an absent and absconding debtor.||

It is admitted, that the domicil of the defendants has always been in this state. A person cannot be recognised as an executor, or in his representative capacity, out of the state in which

† 11 *Johns. Rep.*
162. *Bissell v.*
*Hall.*

‡ *Danforth v.*
*Culver,* 11 *Johns.*
*Rep.* 146.

§ 2 *Saund.* 64
note. 2 *Salk.* 421,
422. 3 *Taunt.*
*Rep.* 380.

|| *Kirby's Rep.*
311. 5 *Johns.*
*Rep.* 37. 1 *Dallas,* 261.

NEWYORK,
May, 1816.

PAWLING
v.
BIRD'S EX'ORS.
* 11 *Vin. Ab.* 58.
pl. 6, 7. 1 *Dall.*
456, 1 *Vern.* 397.

the letters testamentary or probate are granted.* They could not be recognised in *Connecticut*, as the executors of *John Bird*, unless there had been a probate of the will in that state. They could not be made *executors de son tort*. The very nature of the proceeding excludes the idea of its being against the *person*. It is the property of the debtor, in the hands of the *garnishee*, which is the object of the suit. He may appear and defend the action throughout. Such a judgment could not be enforced in *Connecticut*; *a fortiori*, it could not be enforced here. The judgment given on the *scire facias* against the *garnishees*, shows it could not be enforced there; that amounts to a reversal of the original judgment. We have a right to show the judgment to be irregular, or unduly obtained, or illegal and unjust, or to impeach it, for error on the face of the record.

But it is said, the appearance of the defendants has cured all irregularities. Appearance cures matters of form only, not of substance. The want of an original writ is not cured by an appearance. An appearance cannot alter the nature of the action or process, or convert a proceeding *in rem*, into a general action *in rem et personam*. It was necessary for the defendants to go into *Connecticut*, to protect the goods or property, attached there, in the hands of their debtor or attorney. The court of that state could have no jurisdiction against their persons; and the principle of the decision of Ch. J. *Parsons*, in

† 9. *Mass. Rep.*
462. 469.

*Bissell* v. *Briggs*,† where the whole doctrine, as to the effect of judgments in other states, is considered, applies. No faith or credit is to be given to a judgment where the court had no jurisdiction. The want of jurisdiction is a radical defect, which cannot be cured by appearance, and may be taken advantage of, or given in evidence, under the general issue, in an action on

‡ 1 *Chitty's Pl.*
462. n. b. 6 *East*,
583. 1 *Mast*, 352.
1 *Term Rep* 508.
3 *Caines*, 129. 2
*Term Rep.* 644
3 *Term Rep* 442.

§ Per *Spencer*,
J., 6 *Johns. Rep.*
593. 1 *Bl. Com.*
448. 449 2 *Wm.*
*Bl* 1325. 4
*East*, 84.

the judgment.‡

Again, the judgment in *Connecticut* was illegal and unjust. An action does not lie to compel a father to maintain and educate his child. The law cannot coerce a parent to do more than to keep his child from becoming a charge on the town.§ The moral obligation of a father to support his children furnishes no ground for an *assumpsit*. The mother cannot be said to have been the agent of the father; for she was, by the law of *Connecticut*, constituted the guardian of the children, and had the care and custody of them.

The mother, morally and legally, is equally bound as the father, to take care of and maintain the children. She could not, therefore, maintain an action against the father. *Dower* is intended for the maintenance of the children as well as the wife;* and the *allowance* to the wife was in lieu of dower. On no principle, then, could the action have been supported in this state.

It is questionable whether it is the policy of the constitution of the *United States*, that the courts of one state should decide on the rights of citizens of other states. The courts of the *United States* have original jurisdiction in all controversies between citizens of different states, when the matters in difference exceed the value of 500 dollars.

Again, the *divorce* granted by the legislature of the state of *Connecticut*, in the case of Mrs. *Bird*, was a nullity. It is admitted that her husband, *John Bird*, was domiciled, and actually resided in this state, for many years previous to, and at the time of his death. Mrs. *Bird* left her husband; and went to reside with her parents, in *Connecticut*. Her domicil still continued the same as that of her husband.† Can the legislature of another state dissolve the marriage ties of our citizens? As well might they pass laws to dissolve every other contract between citizens of this state. Does not the constitution of the *United States* declare, that no state shall pass any law impairing the obligation of contracts?

*Woodworth*, in reply, insisted, that an acknowledgment of the debt, by an executor or administrator, had the same effect, to prevent the operation of the statute of limitations, as if made by the testator or intestate.

The judgment, in this case, is in the usual form of a judgment against executors, that is, to obtain satisfaction out of the goods of the testator, in the hands of his executors.

The amount of the decision of the supreme court of *Connecticut*, in the suit on the *scire facias*, is, that they would not aid the plaintiffs to obtain satisfaction out of the particular property in the hands of the *garnishee*. They do not question the regularity or justice of the original judgment.

But, he said, he relied on the case of *Taylor* v. *Bryden* as decisive. It placed the doctrine, as to the effect of judgments of the courts of other states, on a fair and unobjectionable ground.

---

NEW YORK,
May, 1816.

PAWLING
v.
BIRD's EX'ORS.

* Co. Litt. 33.
Bracton, b. 2.
ch. 39.

† 1 Johns. Rep.
424. 5 Ves. 157.

NEWYORK,
May, 1816.

PAWLING
v.
BIRD'S EX'ORS.

Let the defendants show, if they can, that the judgment has been unduly or unfairly obtained.

PLATT, J., delivered the opinion of the court. This is an action of debt, on a judgment in the superior court of the state of *Connecticut*, in favour of *Eunice Stanton*, (formerly the wife of *John Bird*, and now the wife of *Albert Pawling*;) against *Willson* and *Smith*, as executors of *Bird*. The plea is *non detinet*; with notice that the defendants would rely on the statute of limitation, to bar the claim.

The material facts disclosed in the case are, that, in the year 1797, and for several years prior thereto, *John Bird*, and *Eunice*, his wife, resided at *Troy*, in this state; that, in *May*, 1797, Mrs. *Bird* left her husband at *Troy*, went to *Connecticut*, and, upon her petition to the legislature of that state, procured a statute divorce from her husband; *John Bird* appearing there by counsel, and opposing the application on its merits.

The statute granting the divorce, constituted Mrs. *Bird* sole guardian of her two infant children; who are admitted to be the children of *John Bird*, by that marriage.

After the divorce, Mrs. *Bird* resided in *Connecticut*; and, while there, expended 617 dollars and 21 cents, in nursing, schooling, and clothing those infant children. Those expenses were incurred during the lifetime of *John Bird*, but without any request or interference on his part; and he continued to reside at *Troy* until he died.

In 1808, *Eunice Stanton* (formerly Mrs. *Bird*, and now wife of *Albert Pawling*) recovered a judgment in the superior court of *Connecticut*, against *Ebenezer Willson* and *Benjamin Smith*, executors of *John Bird*, for the expenses of nursing, schooling, and clothing those two infant children. Those executors then resided, and have ever since lived, at *Troy*; and never were inhabitants of *Connecticut*. Letters of administration upon the will of *John Bird* were granted in this state, and not in *Connecticut*.

The judgment in *Connecticut* was in a suit against these defendants, as executors of *John Bird*, and as persons " *absent and absconding out of that state, to parts unknown*," under a statute of that state, entitled, " An act for the recovery of debts out of the estate or effects of absent or absconding debtors,"

The defendants were never served with process, nor even notified of the proceedings against them; but, according to the provisions of that act, the process was served by delivering a copy to *Uriel Holmes, Uriel Holmes,* jun., and *Seth P. Beers,* respectively, then residing in *Connecticut,* who were averred, in the process, to be " *debtors*" to the defendants; and *Beers* is also styled " *attorney*" for the defendants.

It appears that, under authority given by that statute, *Beers,* one of the garnishees, appeared as attorney, and defended the suit, by pleading the general issue for these defendants; but, for aught that appears, without their consent or privity. The plaintiff, *Eunice Stanton,* was thereby put to prove her demand; and succeeded in obtaining a verdict and judgment for 617 dollars and 21 cents damages, and 35 dollars and 65 cents costs, to be recovered " of the goods and estate of the said *John Bird,* in the hands of his executors." Execution was, accordingly, issued upon that judgment, and the sheriff returned *nulla bona ;* and that the garnishees refused to pay, &c.

A *scire facias* then issued against the garnishees, to show cause why they should not pay the debt and costs ; to which they appeared and pleaded, that they were not debtors of these defendants. Upon which fact, issue was joined ; and, upon that issue, judgment was rendered in favour of the garnishees, and they recovered costs. In this proceeding by *scire facias* against the garnishees, it appears, that the executors of *John Bird* interfered so far as to employ an attorney to defend the garnishees.

The defence set up under the statute of limitations, has been obviated by the testimony of *Richard M. Livingston.* We are, therefore, called upon to consider the whole grounds of this action.

1st. It is well settled, that a judgment in another state (one of the *United States*) is to be considered here as a *foreign judgment,* in every respect, except in the mode of proving it, which is regulated by a statute of the *United States.* It is only *prima facie* evidence of a debt, and may be impeached, when attempted to be enforced here, as *unjust,* or *unfair,* or *irregular. Hitchcock & Fitch* v. *Aickin,* (1 *Caines,* 460.) *Jackson* v. *Jackson,* (1 *Johns. Rep.* 432.) *Taylor* v. *Bryden,* (8 *Johns. Rep.* 173.)

2d. It is also well settled, that a judgment in another state, founded on proceedings by attachment, against the goods of the defendant, he not being within the jurisdiction of such state, is not even *prima facie* evidence of a debt, in our courts. It is regarded as a proceeding *in rem* merely. To consider it as a ground of action here, *per se*, would be contrary to the first principles of justice. As a proceeding *in personam*, the foreign court, in such case, had no jurisdiction. *Kibbe* v. *Kibbe*, (*Kirby*, 119.) *Phelps* v. *Holker*, (1 *Dal.* 261.) *Kilburn* v. *Woodworth*, (5 *Johns. Rep.* 37.) *Bissell* v. *Briggs*, (9 *Mass. Rep.* 462.) *Fisher* v. *Lane*, (3 *Wils.* 297.) *Buchannan* v. *Rucker*, (9 *East*, 192.)

In this case, the defendants were domiciled at *Troy*, in this state, at the time of the proceedings against them in *Connecticut*. The notice, or summons, was served on certain persons in *Connecticut*, whom the plaintiff chose to denominate " *debtors of the defendants ;*" and, for aught that appears, the defendants never heard of those proceedings until after the judgment against them, on which the plaintiffs now rely. It is not true, (according to the case,) as the counsel for the plaintiffs assumed on the argument, that the defendants appeared and litigated the plaintiff's claim in the suit against them in *Connecticut*. The appearance was by the garnishees, *pro forma*, who were authorized by the law of that state to enter an appearance, and defend the suit, for their supposed creditors, without their knowledge or consent. The record states, that " the defendants appeared by *Seth P. Beers*, their attorney," and pleaded, &c. ; but, in the absence of all other evidence on that point, this must be construed to mean, that an appearance and plea were entered by virtue of the power expressly given to the garnishees for that purpose, by the statute. An " *attorney*," on whom process may be served under that statute, means a general agent, or a person employed by the defendants to conduct other suits ; not an attorney previously appointed by the defendants to appear for them in the particular suit, whenever it might be commenced against them. There is no evidence that the defendants ever interfered or took any notice of those proceedings, until the *scire facias* against the garnishees. Then, and not before, it appears by the testimony of Mr. *Beers*, they employed an attorney, and conducted the defence for the garnishees.

I am, therefore, of opinion, that the judgment against the defendants, *in personam*, was without jurisdiction, and, therefore, void. So that this record on which the plaintiffs rely, is not even *prima facie* evidence of a debt.

Whether, as a proceeding *in rem*, it was authorized by the statute of *Connecticut* (now before us) against executors or persons sued in *autre droit*, in any case, is very questionable. (*M'Coombe* v. *Executors of Hudson*, (2 *Dallas*, 73.) *Jackson* v. *Walsworth*, (1 *Johns. Cas.* 372.)

Besides, it appears that judgment was finally rendered in the superior court of *Connecticut*, in favour of the garnishees, on the very ground that they were *not debtors, or trustees*, of these defendants.

The provisions of the statute of *Connecticut*, are analogous to the proceedings by attachment against absconding debtors, according to the custom of *London*: and in the case of *Masters* v. *Lewis*, (1 *Ld. Raym.* 56.,) it was decided that " garnishment can only be where the garnishee is liable to the action of the defendant."

Can it be possible, therefore, that even in *Connecticut* these defendants would be held, in *any respect*, liable, on the ground of those judgments ? It has there been judicially determined, and the records expressly show it, that the defendants were out of the jurisdiction of that state; that the process was served on the garnishees only: and will it be contended that those proceedings can have any validity anywhere, for any purpose; when it also appears, by these very records, that neither of the persons proceeded against, as garnishees, did, in fact, stand in the relation of " attorney, factor, agent, or trustee" of the supposed absconding debtors ?

Such a doctrine would be unworthy of the enlightened jurisprudence of that respectable state : and, *a fortiori*, it would be unjust to allow such proceedings, under a foreign jurisdiction, to form the basis of a legal claim in our own courts.

If the defendants had actually appeared in the suit against them, as absconding debtors, it would not, in my judgment, have altered the character of that record. Such appearance and defence must be deemed to have been made merely to *protect the pledge*, which was the legitimate object of that proceeding.

But, admitting the record to be valid in *Connecticut*, as a pro-

ceeding *in personam;* other important questions have arisen upon the evidence disclosed in this case.

Are we to acknowledge the validity of the divorce in *Connecticut,* between *John Bird* and his wife; they being, at that time, domiciled in this state? For, if they were not legally divorced, it follows, that the wife could not sue her husband, nor the executors of her husband, upon any promise, express or implied, betwen the husband and wife.

In the case of *Jackson* v. *Jackson,* (1 *Johns. Rep.* 424.,) a citizen of this state married a wife in this state, and after living here together about a year, the wife left her husband, went into the state of *Vermont,* and there obtained a decree of divorce, according to the law of that state, on the ground of cruel treatment, the husband continuing to reside in this state. This court decided that the wife could not acquire a domicil distinct from that of her husband; that the proceeding, on the part of the wife, was an evasion of the law of this state, which does not allow of a divorce, except for adultery; and that no action could be maintained for alimony on such decree.

The rule has since been recognised in the case of *Tovey* v. *Lindsay,** (1 *Dow's Rep.* 117.,) in the *English* house of lords. In that case the marriage was contracted at *Gibraltar,* " within the pale of the *English* law:" the parties were, afterwards, domiciled in *England;* and then went to *Scotland,* and were there divorced *a vinculo.* Though the house of lords remitted the cause for a review on the whole matter, yet they, evidently, admit the principle, that an *English* marriage could not be anywhere dissolved, except by an act of parliament; and Lord *Eldon* observed that it had been so decided, lately, by the unanimous opinion of the *twelve* judges of *England;*† though the parties, therefore, may have been, at the time of the divorce, in *Scotland,* and domiciled there *bona fide,* yet such a divorce would not dissolve a contract of marriage made in *England.* (See, also, *Harg. Co. Litt.* 79. *b.* n. 44. *Hub. de conflictu legum. Opinion of Eyre,* Ch. J., 2 *H. Bl.* 410. 3 *Mass. Rep.* 158.)

But this case is distinguishable from that of *Jackson* v. *Jackson,* (1 *Johns. Rep.* 424.,) in one strong feature. Here the marriage (as may fairly be inferred from the evidence) was contracted in *Connecticut;* and both the parties, although domiciled in this state at the time of the divorce, appeared and litigated the question of divorce in *Connecticut.* In the case of *Jackson,*

*v. Jackson,* the parties were not only domiciled here, but the contract of marriage was made in this state.

The investigation of this cause has led me to examine thus far the question of divorce; but whether the *Connecticut* decree of divorce, in the case of *John Bird,* is obligatory here, appears to me to be a question not necessarily involved in the decision of this cause. I, therefore, forbear to express an opinion on that difficult and important point, until a case shall require our decision upon it.

But if the validity of the divorce be admitted, then, in judgment of law, the obligation to support the children of that marriage was equal upon both the parents; there being no special contract between the parties, nor any provision on that subject in the statute granting the divorce. The only provision in regard to the children (and that was made upon the express application and request of Mrs. *Bird*) was, that the father should be devested of the custody and control of them, and that the mother should be their sole guardian.

The mother being under equal natural obligation with the father to maintain her offspring, and no positive law of *Connecticut* being shown on that subject, I can see no legal ground to authorize a recovery by the mother against the father, for the maintenance of the children. At most, she can have a right to sue him for *contribution* only.

Upon the whole case, I am of opinion, that the judgment is not even *prima facie* evidence of a debt, being without jurisdiction, as a proceeding *in personam :* and,

2dly, Admitting the jurisdiction of the superior court of *Connecticut,* and admitting, also, the validity of the divorce, yet the judgment in favour of the divorced wife against the executors of her former husband, for the whole maintenance of their common children, was contrary to law.

The defendants, are, therefore, entitled to judgment.

Judgment for the defendants.