Colcock, J.
delivered the opinion of the Court.
In deciding this case, I am desirous of avoiding, as far as it is practicable, the much agitated question, as to the effect of a judgment recovered in one of the States of our Confederacy, where a suit is instituted to enforce it in a Court of another of the States : and it seems to me, that there is a plain and obvious ground on which this case may be placed, in which all the con-trovertisis on both sides agree; or which "at least is unembarrassed by any of the serious difficulties of the question.
Whatever may have been the intention of the, Convention which framed the Constitution, or of the act of Congress of 1790, in relation to the effect of judgments, it must be conceded, that it could never have been intended to violate any of those fundamental principles of judicial proceedings, by which the tribunals of all civilized States are regulated. It never could have been intended to give effect, any where, to a judgment *245 pronounced by a Court, which had no jurisdiction of the cause in which it was rendered. The validity of-every judgment depends upon the authority which the Court possessed over the subject of its adjudication ; and the judgment of a Court on a subject over which it had no jurisdiction, is uo judgment, but a mere extra-judicial opinion. It follows necessarily that it must, be competent for every tribunal, when a judgment is produced before it, as the foundation of an action, to inquire, in the first place, into the jurisdiction of the Court by which it was rendered ; and if it appear on the fate of the proceedings, that the Court had • no jurisdiction, its judgment can have no effect, but must be regarded as a nullity.
Uhnely, 4 VidoK <3®
This doctrine was very elaborately discussed-in the case of Borden v. Fitch, 15 Johns. 121, which was argued with great ability both by the bar and the bench. The principal question, in that case, was as to the validity of a divorce which had been obtained in Vermont on the application of the husband, and which was offered in evidence to exclude an after-taken wife from being a witness against him. The first marriage took place in Connecticut, where the wife resided, and she had never been in Vermont. There were some facts in evidence, which induced the Court to throw out the suggestion, that the divorce might be considered as void, on the ground that it had been procured by fraud. But they were very clearly of opinion that it was void for want of jurisdiction: and the second wife was admitted as a witness. Thompson, C. J. who delivered the opinion of the Court, said : “ To sanction and give validity and effect to such a divorce, appears to me to be contrary to the first principles of justice. To give any binding effect to a judgment, it is essential that the Court should have jurisdiction of the person, and of the subject matter; and the want of juris diction is a matter that may always be set up against a judgment, when sought to be enforced, or where any benefit is elaimed under it. The want of jurisdiction makes it utterly void, and unavailable for any purpose.” 15 Johns. 141.
Of the cases cited by C. J. Thompson, there are some to which it may be doubted whether the principle is properly applicable. But there are numerous cases in the English Courts, as well as in the Courts of our sister States, referred to by him, which amply sustain the position, that a judgment or decree *246 aghinst a person not served with process to appear, and not being within the jurisdiction of the Court, and not appearing in person, or by attorney, is null and void.
In Buchanan v. Rucker, 9 East. 192, it was held bv the i Court of King’s Bench, that the law would not raise an assump-sit upon a judgment obtained in the island of Tobago by default, against a party, who, upon the face of the proceedings, appeared to have been summoned by nailing a cony of the declaration to the Court-house door; as it did not appear that he had ever been present, in the colony, or subject to the jurisdiction of the colonial Court, at, the commencement of the suit, or afterwards. And it was said by the Court, that it could make no difference, that such proceedings were valid by the law of Tobago.
In Bissell v. Briggs, 9 Mass. 462, Parsons, C. J. in pronouncing the judgment of the Supreme Court of Massachusetts, distinguishes as to the effect which is allowed to a foreign judgment, when it is offered to justify an act done under its authority in the country in which it was rendered ; and when it is produced for the purpose of obtaining execution of it from another Court. In the former case he holds the judgment conclusive as a justification, provided the Court rendering it had jurisdiction of the cause; whilst in the latter it is only received as prima facia evidence of a debt, or an assumpsit, and subject of course to an examination into its merits. But in both cases, he adds, that a foreign judgment may always be impeached by showing that the Court in which it was obtained had no jurisdiction ; and if a defect of jurisdiction should appear, the judgment would be altogether rejected as a mere nullity, without any inquiry into its merits. He then enters into an examination of the provisions of the Constitution, and the act of Congress, in relation to the credit to be given to judgments of the ¡State Courts, with the view of determining how far the application of the general rule, as to the judgments of foreign jurisdictions, has been affected by them. And although he contends, that judgments of the h'tate Courts were intended to be placed upon a better footing than other foreign judgments; and that they are in all cases to be received in the Courts of the other States as conclusive, and not merely prima facie evidence of the merits: yet he distinctly limits this effect to such matters, as were properly within the jurisdiction of the Courts by which the judgments were rendered ; *247 and lays down emphatically, that to intitle the judgment of a State Court to the faith and credit mentioned in the Constitution, the Court must have had jurisdiction both of the parties and the cause. “ Neither the Federal Constitution, nor the act of Congress,” he argues, “ had any intention of enlarging, restraining, or in any manner, operating upon the jurisdiction of the Legislatures, or of the Courts of any of the United Stales. The jurisdiction remains as it was before ; and the public acts, records, and judicial proceedings contemplated, and to which full faith and credit are to be given, are such as were within the jurisdiction of the State whence they shall be taken. Whenever, therefore, a record of a judgment of any Court of any State is produced as conclusive evidence, the jurisdiction of the Court rendering it is open to inquiry : and if it should appear that the Court had no jurisdiction of the cause, no faith or credit whatever will be given to the judgment.” 9 Mass. 467.
The Superior Court of Connecticut, in the case of Kibbe v. Kibbe, Kirby, 3, refused to sustain an action of debt upon a judgment certified from the Supreme Court of Massachusetts, on the ground that the supposed judgment debtor had not been personally served with process, to compel his appearance in the original cause, and that therefore the Court, where the judgment was recovered, had proceeded without any jurisdiction of the cause.
The same principle governed the decision of the Supreme Court of Pennsylvania, in the case of Phelps v. Holker, 1 Dallas, 261. And it has been repeatedly recognized in the Courts of New York. Kilburn v. Woodworth, 5 Johns. 41. Robinson v. Executors of Ward, 8 Johns. 90. Fenton v. Garlick, 8 Johns. 197. Pawling v. Burd’s Executors, 13 Johns. 192. “ These cases,” remarks Chief Justice Thompson, “ are abundantly sufficient to show the light in which we have viewed such judgments. We have refused to sustain an action here, upon a judgment in another State, where the suit was commenced by attachment, and no personal summons or actual notice given to the defendant, he not being at the time of issuing the attachment, within such State, in such cases we have considered the proceedings as in rem, which could only bind the goods attached; and that the judgment had no binding force in personam. This principle is not considered as growing out of any thing peculiar *248 to proceedings by attachment, but is founded on more enlarged and general principles.” 15 Johns. 142
It would be a work of supererogation to examine very particularly, tbe elementary writers in support of this doctrine. I will content myself with barely referring to 1 Kent’s Com. 243, and 1 Stark. Ev. 214.
It is said in a note, 3 Wheat. 236, that whether want of jurisdiction, &c., may be pleaded to a judgment of a sister State, is still an open question in the Supreme Court of the United States. I certainly agree that this is a correct exposition of the case of Mills v. Duryee, 7 Cranch, 481. it has never been decided that want of jurisdiction could not be pleaded: but that it may be pleaded, and is a good bar, is not only clear, in my opinion, upon general principles ; but I consider Judge Washington, in the case of Green v. Sarmiento, 3 Wash. C. C. Rep. 17, although oontending.for the couclusiveness of the judgments of the different States, when sought to be inforced in another than that in which they were obtained, as expressly yielding this point, although with some reluctance, and not in words but in effect. He undertakes to answer the objections which are made to the conclusiveness of these judgments, and remarks: “ It is said, that a judgment which thus claims an exemption from re-exam-iuation, may have been exparte, the defendant having had no opportunity to make his defence, if the law of the State does not prohibit such an outrage upon the immutable dictates of justice, then the Court which inadvertently gave the judgment, or a superior Court, would provide the redress. If the law or the Courts should leave the injured party without a remedy, I will not say, because in this case it is unnecessary, whether the Courts of another State would be bound to consider such a judgment as conclusive or not. But if they should be so bound, then Í can only say, that the act of Congress was not passed with sufficient consideration, and that it may and ought to be so amended, as to give a conclusive effect to judgments, only in cases where the trial was perfectly fair, and where both parties were, or might have been, heard. But the supposed case although it might form an exception, furnishes no just ground of objection to the rule itself.”
It is true that the case of Green v. Sarmiento, did not call for the determination of this point; but enough is said to show *249 what must have been the opinion of the learned Judge, if it had been necessary to have decided it. See also Mayhew v. Thatcher, 6 Wheat. 129.
. _ N -w it is apparent in the case at bar, that the defendant himself was not within the jurisdiction of the Court of North-Carolina, which rendered this judgment; nordoesiteven appearthathehad any property in that State. The record itself shows, that he was made a party by publication, and on account of his being one of a number of persons who held some of the property mentioned in a mortgage, which it was the object of the suit to. foreclose. This was, at most, a mere matter of form to bring the other parties properly before the Court, as it is a rule in Equity, that all who are interested must be made parties. But so far as we can see the case, even this was unnecessary as to the present defendant. Such notices are very common every where; and where they have the effect of bringing in a person who is actually interested in the event of a suit, are very proper and useful. But it is absurd to suppose, that by such a proceeding the jurisdiction of a State can be extended. This judgment then being a nullity, we are spared the unpleasant necessity of considering the effect of the Constitutional provision, and the law of Congress in relation to the operation of judgments in the several States, other than those in which they are obtained.