## DARRACH v. WILSON.

July 3, 1837.

*Demurrer.*

An action of debt cannot be maintained, upon a judgment obtained against a defendant in foreign attachment, under the act of 1705.[a]

THIS was an action of debt.  The plaintiff declared on a judgment obtained against the defendant in foreign attachment. Defendant demurred.

The case was argued by

*Bradford*, for plaintiff, and
*C. Ingersoll*, for defendant.

The cases cited by the counsel, are referred to in the opinion which follows :

STROUD, J.—Whether *an action of debt* may be grounded upon *judgment* obtained against a defendant in *foreign attachment*, under the act of 1705, is the only question presented by this case.

To answer this satisfactorily, the character of such a judgment must be ascertained.

The act of assembly has in view *alternative* purposes—the one —and this is *primary*—is to render the *effects* when found here of *absent* debtors liable to the demands of their creditors—the *other*—to induce such debtors to convert the attachment of their property into *personal* actions against them.   The latter alternative, however, depends upon the choice of the debtor, and, at most, therefore, is but incidental and contingent.   If adopted, the proceeding becomes at once a personal action, in which special bail has been given.   The pleadings, mode of trial, judgment and execution all partake of that character.

But when the attachment is suffered to continue, it seems to result, as well from the general scope of the act, as from a com-

---

[a] By section 64 of the act of 13th June, 1836, when the defendant takes defence without dissolving the attachment, judgment against him has the like force and effect as in case of an action commenced by summons.

[Darrach v. Wilson.]

parison of its particular provisions, that the attached property alone can be reached, or in any wise affected by the proceedings. The judgment, therefore, in this case, as to its legal effect, is a judgment against the *attached property* merely, *without any of the incidents of a judgment in a personal action.*

The great object of the law is distinctly declared in the preamble to be, to subject the *effects* of debtors not within the reach of personal process, to the payment of their debts. The courts to effectuate this, are authorized to issue attachments which the sheriff is commanded " to serve upon the goods and chattels" of the debtor. Should these at the time be in the possession of a third person, he is to be made a party to the proceedings, so far as concerns *that property*—and at his election, by giving security, his possession is not to be disturbed. If he refrains from giving security, the sheriff is empowered to take the *attached* effects into his actual custody. Where these are admitted by the garnishee to be the defendant's property, or on the trial are found so to be by the jury, they may *be taken* in execution and sold by the sheriff, and the proceeds, under certain precautions may be received by the plaintiff. Now in each of these various provisions, the *goods and chattels* of the defendant are mentioned *eo nomine,* or are comprehended by necessary implication, as the subject to be operated upon.

It is observable that, with the exception of *two points*—*the character of the judgment against the defendant,* and *the mode to be pursued by the defendant to disprove or avoid the debt recovered by the plaintiff*—there is an unusual fulness of direction in the act of assembly. The jurisdiction and powers of the court; the nature of the original process; the obligation of the sheriff to execute it, and the manner in which this is to be performed; the duties, rights, and responsibilities of the garnishee, are all set forth with distinctness and precision. But of the *judgment* against the defendant, it is merely said, that it may be granted to the plaintiff " at the *third* court after the effects are seized." In practice, although the act speaks of *a trial*—the judgment is *by default,* and *of course,* on motion of the plaintiff, *without* trial— the amount of which, if in debt, is determined by the plaintiff's declaration, *Serg. on Att.* 113 ; and even where a writ of inquiry is necessary, the defendant is not entitled to be heard by the inquest. *Ibid.* 112. Where then every thing which is *expressed*

[Darrach v. Wilson.]

in the act is restricted to *the goods*—when the process is against *them,* and to be served upon *them,* and the garnishee is to be summoned merely in respect to *them,* &c. &c.—is it not a proper deduction that the *judgment* upon the character and extent of which the act *is silent,* is to be limited also to the *goods?*

Judge Sergeant has treated this part of his subject as open to some doubt, although he evidently inclines to the opinion, (and his observations tend *directly* to this conclusion,) that the judgment is to be regarded as restricted in its operation to the *goods attached,* and will not justify an execution against any thing else. *Serg. Att.* 112, 113.   At the date of his publication, no plain intimation of opinion on this topic had fallen from the courts.   But in Fitch *v.* Ross, 4 *S. & R.* 564, *Judge Duncan* speaks unhesitatingly upon it in this manner: "the execution can *only* be against the *goods attached* and *not* against the person of the defendant."

Again, it is settled that a *judgment* in *foreign attachment* will not sustain a plea of *former recovery. Serg. Att.* 110, 111.   And the plaintiff after having prosecuted the attachment to *judgment,* may abandon the proceedings and resort to a personal action for his entire original claim, with as little embarrassment as if the attachment had not been laid. *Ibid.* 110.   On what ground does this distinction rest, but that the *judgment in attachment* is destitute of the essential attributes of a *judgment* in personal actions?

*Foreign attachment* is frequently spoken of as a proceeding *in rem,* and though this is not strictly correct in a *technical* sense, yet looking to the very purpose for which it is authorized, and the end which alone can be attained by it, the description is sufficiently appropriate.

Regarding then the *judgment* declared upon in this case as a judgment against the *thing* attached, and as not affecting the defendant's person or estate generally, I am not able to see how it can be the foundation of a *personal* action; as well might a judgment in a *scire facias* on a mortgage or mechanic's claim be turned to such a purpose; an experiment as yet untried, and probably unthought of.

Another view of this subject leads to a result equally unfavourable to the support of the present action. *Foreign attachment* lies only where the defendant is a non-resident and *without* the jurisdiction of the court.   The proceeding is altogether *ex parte,*

[Darrach v. Wilson.]

and *actual* notice of its commencement or progress is not required at the hands of the plaintiff or any officer of the law. In Buchannan *v.* Rucker, 9 *East* 192, a judgment though rendered in a *personal* action in the Island of Tobago, against a defendant who by the record appears to have been absent from the island, and beyond the jurisdiction of the court when the action was instituted, was held *insufficient* to raise an *assumpsit* by implication on the part of the defendant. And in Kilbrun *v.* Woodworth, 5 *Johns. R.* 37, the Supreme Court of New York determined that *debt* could not be maintained or a judgment recovered in *Massachusetts,* in an action originated by an *attachment of goods,* without any personal summons or actual notice to the defendant, who was at the time of issuing the attachment a resident of New York. Numerous other cases have been determined since Kilbrun *v.* Woodworth, in that state, on which the grounds of that decision were fully examined and confirmed. See Robinson *v.* Ward's Exrs. 8 *Johns.* 90; Fenton *v.* Garlick, 8 *Johns.* 197; Pawlings *v.* Bird's Exrs. 13 *Johns.* 192; Borden *v.* Fitch, 15 *Johns.* 121; Shumway *v.* Stillman, 4 *Cowen* 294, *S. C.* 6 *Wend.* 447; Starbuck *v.* Murray, 5 *Wend.* 154; Bradshaw *v.* Heath, 13 *Wend.* 407. Anterior to this train of decisions in New York, the Supreme Court of Connecticut had established the same doctrine in Kibbe *v.* Kibbe, *Kirby's Rep.* 119, which has been followed in this state by Aldrich *v.* Kenney, 4 *Conn. R.* 380. To the same effect are Bissell *v.* Briggs, 9 *Mass. Rep.* 464; Barber *v.* Root, 10 *Mass.* 262; and 6 *Pick.* 232. One general principle is asserted in all these cases, namely: that to give validity in one state to a judgment obtained in another, it is essential that the court rendering the judgment should have jurisdiction both of the *subject matter* of the action, and *the person* of the defendant. *Attachment* laws, which are found in almost all the states, are good so far as concerns the property subjected to their operation; beyond this they were never designed to be extended, and cannot be extended without sacrificing the very rights which government was meant to preserve.

Two decisions in our own state were adverted to on the argument as countenancing the views of the plaintiff in the institution of this suit. The *first,* Phelps *v.* Holker, 1 *Dall.* 261, was an *action of debt* brought upon a *judgment* in *foreign attachment* rendered in a court of *Massachusetts.* A case was made for the

court submitting as the single point on which doubt was entertained, " whether the judgment was *conclusive* evidence of the debt." The court decided that it was *not*. To this extent, it is unquestionable authority.

It is plain, from the manner in which the question is stated, from the arguments of counsel, and the opinion of the judges, that the bearing of the clause in the *articles of confederation* which provides that " full faith and credit shall be given in each of the states to the records, acts, and judicial proceedings of the courts, &c. of every other state," upon a *judgment of a sister state in foreign attachment,* was the only matter to which attention was asked or bestowed. The arguments of counsel begin and end with this, and the judgment of the court takes no wider range. It is true *two* of the judges impliedly admit that the judgment might be the foundation of an action, *McKean, C. J.,* saying " the judgment cannot be considered as *conclusive* evidence of the debt, and therefore the defendant ought still to be at liberty to controvert and deny it;" and *Judge Rush* adds to an interrogative, denial of the *conclusiveness* of the judgment " I am likewise of opinion that *it is examinable* in the *present* action."

The plaintiff's counsel has produced to us a copy of the docket entries in Phelps *v.* Holker, which show that a trial afterwards occurred on the plea of " *non assumpsit* (though the action was *debt,*) *payment,* and usury with leave to give the special matter in evidence." The original consideration of the judgment would seem, therefore, to have been thrown open, and the result is stated to have been a verdict for the plaintiff, for a considerable amount. It does not appear that judgment was ever entered on this verdict, or that an effort was made to obtain a new trial, or raise any further question on the subject.

It is certainly a just inference from all this, that the *defendant's counsel,* (three in number) did not consider the point whether such a judgment would support an action at all, a matter of doubt. They took the affirmative for granted, and contented themselves with controverting the *conclusiveness* of the judgment upon their client's rights. Of the value of the argument drawn from this source, different minds will undoubtedly form different estimates. In Pennock *v.* Hoover, 5 *Rawle* 313, the judge who delivered the opinion of the court deemed a parallel occurrence entitled to great consideration, while in the same case, (page **317,**) the deliberate

[Darrach v. Wilson.]

action of the legislature based, without doubt, upon the advice of counsel as to the application for statutable interposition, is supposed to weigh nothing. Bating this exception, the tacit acquiescence of counsel, however eminent or numerous, like the *obiter dicta* of the bench, has not, I apprehend, been ranked very high in the scale of authority. Apart from the acquiescence of counsel, and the brief *extra-judicial* expressions ascribed in the report to two of the judges, there is nothing in *Phelps* v. *Holker*, inconsistent with the settled doctrine of the courts of Great Britain, Massachusetts, Connecticut, and New York.

Betts *v.* Death, *Addison's Rep.* 265, is the other case cited on the argument as direct authority for the plaintiff. It conforms to the views which were *assumed* in Phelps *v.* Holker, the president of the court saying, " an attachment is *in rem,* not *in personam.* So far as the *property attached,* it is *conclusive,* under the precautions and provisions of the act of assembly—*beyond* the property attached, the *judgment* may be questioned." Eventually, the case terminated in a verdict for the *defendant.*

As the decision of a remarkably sound mind, it is entitled to great respect, but having been made during the trial of the cause, and resting, as I suppose it does, upon the *presumed* authority of Phelps *v.* Holker, it cannot be set in opposition to the deliberate adjudications in other states on the same point, fortified as these are, by reasons satisfactory to the ablest jurists of our country.

Looking beyond decisions on either side of this question, there appears to me substantial objections to this action. If the judgment declared upon can be regarded as the groundwork of an action, it seems to follow, that its authenticity being established by competent proof, it is to be taken as *prima facie* evidence for the plaintiff, and the burthen of *disproving* it would therefore be cast upon the *defendant.* And yet, theoretically and practically, the defendant is an utter stranger to the whole proceeding from which the judgment results. His name is to stand as defendant, but he has no right, even if he were on the spot, to gainsay what his adversary alleges. This is a violation of the rights of strangers which nothing but invincible necessity can sanction; and no such necessity exists here.

If it be said that the judgment, when rendered, is not to be taken as establishing a *prima facie* case for the plaintiff, but that it will be incumbent on him to prove the consideration of that judgment,

[Darrach v. Wilson.]

precisely as if it had no existence, the concession destroys all pretext for sustaining the action. For this would not conduce in the slightest degree to the convenience or advantage of the plaintiff, either in the preparation of the pleadings or in the conduct of the trial. It would indeed augment his labours, by the necessity of embodying the entire *allegata* in the declaration, and varying the character and enlarging the quantity of proof, to correspond with and sustain it. But how could a declaration so framed, without a perversion of technical distinctions and appellations, be termed or regarded as an action upon the *judgment?* Unless the original elements of the judgment be merged in it, it wants the essential attributes of a judgment, and if these *are* merged, they certainly need not be set forth as if they were *not.*

The declaration in this case is proper in this respect. It is upon the judgment *as such*, with a *prout patet per recordum*, and consequently proposes to prove this and no more in order to found a clear right, until impeached, to a verdict. Believing for the reasons assigned, that it imparts no such right—is no evidence of debt—that its legal effect is restricted to a condemnation of the attached property, and as to all other purposes it is a nullity, I am of opinion that judgment should be given for the defendant.

PETTIT, *President*, concurred.

JONES, J. dissented.

Judgment for defendant.