Tilshman C. J.
This case came before the Court last year, and was decided in favor of Swift, so far as concerned his claim as partner of M’Call. It was at that time supposed that his claim in that capacity would cover the whole sum *awar<^e<l t° him by the arbitrators. But it has turned out. otherwise, and we are now to decide on the right of Swift as assignee of the Bank of North America. In that respect the case is simply this. The bank advanced money to George Plumstead deceased, on a note with Swift’s name on it. By way of security Plumstead put into the possession of the bank, a bill of lading of goods shipped to St. Domingo indorsed by him in blank. It does not appear, that the bank took any steps, or gave any notice of their right to the goods which were attached by M’Call, after arrival in *339 St. Domingo, condemned as Plumstead’s property, and sold for the use of M’Oall by the judgment of a court in that island. Swift satisfied the bank for Plumstead’s debt, and received an assignment, by virtue of which he stands in the place of the bank. I do not see how the claim of the bank can be supported. The assignment of the bill of lading was all that could be done in the first instance, but it was necessary that more should be done afterwards. They should have given notice to M’Oall (as Swift did of his partnership right) or have pursued proper measures to get possession of the property in St. Domingo. Their inchoate right has been lost by negligence. Probably they were not very anxious about it, thinking themselves secure by Swift’s responsibility. It has been contended that the proceedings in St. Domingo were void, it being contrary to common sense, that the property of a dead man should be subject to attachment. Different countries have different laws, but I do not see any thing so monstrous in the attachment of a dead man’s property for the purpose of paying his debts, as to make the proceedings void on that account. It appears that the court were under no deception as to the facts, for the record states the death ofPlumstead. An objection was started as to the jurisdiction of the court, which was said not to be derived from the authority of the French government. I do not think we can inquire into the matter. There was a court de facto, and that is sufficient. The jurisdiction is derived from those in whom the power of the country is at present vested. Another point has been made, of which if the plaintiff'could properly avail himself, I should think it worthy of great consideration. It is this. That Plumstead having been a citizen of Pennsylvania, it was not lawful for the defendant, *a citizen of the same state, to frustrate our testamentary law, by attaching the effects of Plumstead in a foreign country, and thus preventing an application of the assets to the payment of debts according to the provisions of our act of assembly. But it is a sufficient answer to the plaintiff, that this plea does not lie in his mouth, because he is not contending for the creditors ofPlumstead, but for himself in exclusion of all others. I am therefore of opinion, that so far as concerns the claim derived from the bank, Swift is not entitled to recover.
Yeates J.
I concurred in opinion with the Chief Justice, as delivered by him in this case in December term 1810. ' I now mean to express the grounds on which my decision was formed, and which I had committed to writing at the time.
*340 Swift and M’Call were citizens of this state, bound by its laws; and the latter knew that the adventure to St. Domingo was on the joint account of Swift and Plumstead. It being a limited partnership between them, M’Call had no right to disturb the order of payment secured to the creditors of the firm fro hac vice, or of Plumstead individually, upon his decease, by prosecuting his attachment in a foreign court after his death. It is similar in principle to the cases cited by Shippen Justice, in 2 Dall. 232, viz., Hunter v. Potts, 4 T. Rep. 182, and Sill et al. v. Worswick, 1 H. Bl. 665. M’Call took indirect measures to apply the whole coffee to his own use, in direct violation of the laws of this state, and his virtual contract with his fellow citizens, who were creditors. It was, therefore, consistent with every principle of law and justice, to make him answerable for the money he has received.
Swift is the surviving partner, and liable for the debts of that partnership. Mr. Meeker had actually obtained judgment against him for a debt, due from the company on that adventure. The diversion of the partnership funds from him, operates as a serious injustice to the creditors; more particularly as he has made a general assignment to his creditors, and is considered to be insolvent.
It has been urged that no instance can be shown, where an attachment levied on the goods of a third *the injured person could recover of the plaintiff in the attachment. But the justice of the claim is evident here, admitting the fullest validity to the decree of the judge at St. Domingo. Can a suitor obtain his debt out of the effects of a stranger, and not be responsible to the injured party for his conduct? It is much stronger than the case of a sheriff, levying on the goods of one man for the debt of another; because, in that instance, the person whose goods have been unjustly seized, may maintain trespass ¿gainst the sheriff; and I should have little doubt that he might waive the tort, and bring assumpsit for the amount of the goods sold, which had been received by the plaintiff. The same principle would hold against the defendant here otherwise Swift would be wholly remediless. If he cannot, as surviving partner, support a suit against M’Call, he could maintain no action whatever. This is not an action brought against the garnishee, but against the plaintiff in the attachment, for money injuriously obtained by him, in subversion of the rights of creditors.
The question now submitted to us for our decision is, to what amount the defendant is liable in the present action.
*341 I take the extent of his liability to be. the amount of the balance d ue to Swift from the partnership; in which I include all debts for which he as surviving partner would be liable, though they may not yet be discharged, provided the sums received by M’Oall under the attachment would reach so far. But if these debts will not absorb the whole sum, I take it that the defendant would not be responsible for the difference, either to the bank or to Swift, but to the administrator of Plumstead, in trust for his general creditors. The bank, holding the original bill of lading, indorsed in blank by Plumstead, have by their negligence forfeited their claim to a preference; and I perfectly agree that Swift’s claim in his own right, stands on much stronger ground than that derived from the bank.
Brackenridge J. concurred with the Chief Justice.
Judgment for the defendant.
[Cited in 8 Phila. 269.]