## Case No. 17,206.

WARREN MANUF'G CO. v. ETNA
INS. CO.

[2 Paine,·501.] 1

Circuit Court, D. Connecticut.2

JUDGMENT OF STATE COURT—CONCLUSIVENESS IN
OTHER STATES—FRAUD—NECESSITY
OF PERSONAL SERVICE.

1. Prior to the adoption of the confederation
and the constitution of the United States, the
several states were considered entirely inde-
pendent of each other, and judgments recover-
ed in their respective courts were foreign judg-
ments in every respect, as in any separate and
independent government; and whatever chan-
ges now exist in this respect, must be sought
for in the constitution and laws of the United
States.

2. Conflict of opinion as to the construction
of the constitution and act of congress relative
to the force and effect of judgments rendered in
the several states.

3. Under the constitution of the United States
and act of congress of 1790 [1 Stat. 123] the
judgment of a state court has the same credit,
validity and effect, in every other court in the
United States, which it has in the state where
it was rendered: and whatever pleas would be
good to a suit thereon in such state, and none
other, could be pleaded in any other court in the
United States.

4. It would be competent to show that the
judgment was obtained by fraud.

[Cited in brief in Kinnier v. Kinnier, 45 N.
Y. 536.]

5. Under the constitution and act of congress,
the question of jurisdiction remains open as at
common law. It may therefore be shown by
proper evidence, that the court rendering the
judgment had no jurisdiction; and the pleadings
may be so shaped as to admit such evidence.

6. In order to sustain the judgment, the court
must have had jurisdiction of the parties, as
well as of the subject-matter.

[Cited in brief in Sevier v. Roddie, 51 Mo.
584.]

7. Except in proceedings under the statute
process of foreign attachment, which is in the
nature of a proceeding in rem, in order to give
the court jurisdiction of the person, due notice
of the suit or service of the process must be
shown, or the judgment is a nullity. And even
in case of attachment, if the goods attached are
insufficient to satisfy the attachment, no suit
can be sustained upon the judgment for the de-
ficiency, because the defendant is not personally
amenable to the jurisdiction of the court.

[Cited in brief in Blyler v. Kline, 64 Pa. St.
131.]

8. A judgment obtained without notice to the
defendant, or his appearing in any manner to
answer to the suit, can have no validity or bind-
ing effect.

9. The provision in the constitution of the
United States, that the citizens of each state
shall be entitled to all the privileges and im-
munities of citizens in the several states, does
not apply to corporations; and bodies corporate
have no right to establish themselves or transact
business in a state otherwise than according to
the laws of that state regulating their conduct.

[Cited in Farnum v. Phœnix Ins. Co., 83 Cal.
261, 23 Pac. 873.]

10. Statutes ought not to have a retrospective
effect. As a general rule, when no time is fixed,

1 [Reported by Elijah Paine, Jr., Esq.]
2 [Date not given. 2 Paine includes cases de-
cided between 1827 and 1840.]

they take effect from date. They cannot, by
any fiction or relation, have any effect before
they are actually passed.

[Cited in Ellis v. Connecticut Mut. Life Ins.
Co., 8 Fed. 85.]

[Cited in brief in City of St. Louis v. Oeters,
36 Mo. 460.]

11. Where, therefore, the law under which a
suit was brought on a policy of insurance, was
passed in March, 1835; the loss for which judg-
ment was obtained occurred in January, 1834;
the policy expired in October of the same year,
and the suit was commenced in April, 1835; it
was held, that the law in its application to the
proceedings and judgment was retrospective, and
therefore a nullity.

At law.

THOMPSON, Circuit Justice. This is an
action of debt brought by the Warren Manu-
facturing Company, a body corporate, duly
incorporated by a law of the state of Mary-
land, located and doing business in Baltimore;
and all the stockholders, residents and citi-
zens of the state of Maryland, against the
Etna Insurance Company, a body corporate,
duly incorporated by a law of the state of
Connecticut, doing business in Hartford, in
the state of Connecticut, the stockholders re-
siding in, and being citizens of the state of
Connecticut: and the action is founded upon
a judgment recovered in the county court of
the Sixth judicial district of the state of
Maryland, on the first day of January, in the
year 1836, for the sum of $20,000. The de-
fence set up in the case is embraced under
four pleas: (1) Nil debit. (2) Nul tiel rec-
ord. (3 and 4) Special pleas, stating in sub-
stance that the defendants, at the time of
the commencement of the suit, were, and
ever since have continued to be, inhabitants
of the state of Connecticut, located, estab-
lished and resident at Hartford, and were
not, during said time, or at any other time,
inhabitants of, or located, established or resi-
dent in the state of Maryland, or within the
jurisdiction of the said state or the laws·
thereof, or any of the courts thereof; and
that the defendants were never served with
any process in said suit, nor had any notice
thereof, and never answered thereto or ap-
peared or defended therein, nor in anywise
authorized any other person in their behalf
to appear and answer, and defend the same;
that they were incorporated by the legisla-
ture of the state of Connecticut, and were
never in any otherwise incorporated than by
the legislature of Connecticut.

The plaintiffs demur to the plea of nil debit,
and take issue upon the plea of nul tiel rec-
ord; and to the third and fourth pleas, the
plaintiffs reply, setting out the incorporation
of the defendants: and that, from the time
of their incorporation up to the time of the
commencement of the suit in the Maryland
county court, they had an agent residing in
Baltimore, invested with powers to receive
proposals for insurance against loss by fire,
by policies signed by the president of said
company, and attested by their secretary and

countersigned by their agent in Baltimore; and that, by virtue of said authority, the policy of insurance upon which the Maryland judgment was obtained, was duly effected, and from time to time renewed, and the premium paid to the said agent, and by him paid over to the defendants. And the plaintiffs, in their replication, further allege and set out an act of the legislature of Maryland, passed on the 7th day of March, in the year 1835; by which it is declared, that any insurance company not incorporated by the state of Maryland, which shall effect, or shall have effected, insurance upon property within that state, and shall transact business within that state, shall be deemed to hold and exercise franchises within the state; and that every such corporation which shall hold and exercise, or which shall have held and exercised franchises within the state, shall be liable to be sued within the state, in the courts of the state, upon contracts of insurance on property within the state, or on any dealings or transactions within the state; and that when any suit shall be instituted against any such insurance company, service of the writ issued, in such cause, upon the president or any directors of such company, or upon any agent of such company, shall be deemed sufficient service, and that judgment may be thereupon rendered by default, if such company shall fail to appear; and that, if any such company, after any liability shall occur or shall have occurred, withdraw its agent from the state, or shall revoke the authority of the agent, and shall not appoint another, and no president or directors of the company can be found within the state, upon whom to serve any writ or process, that service thereof upon the person last the agent of the company shall be deemed sufficient service, with a proviso that where such service shall be made upon an agent after his authority shall be revoked, before judgment by default shall be rendered, proof shall be made in the mode pointed out in the act, that a copy of such writ or process has been delivered to the president or two directors of the company within the state where such company shall have been incorporated; and the replication then avers, that the writ in the Maryland suit was duly served upon the said agent of the defendants, as provided by the act aforesaid; and the replication further avers, that before rendering the said judgment, a copy of the writ or declaration was, at the town of Hartford, in the state of Connecticut, served upon Thomas K. Brace, president of the company, whereby notice of the said suit was given to the defendants. To this replication the defendants rejoin, denying that they had any agent in the city of Baltimore, vested with the powers set forth in the replication, and denying, also, that the writ in the Maryland suit was served upon such supposed agent, as required by the Maryland law, and that the court did not thereby become invested with jurisdiction in

and over said suit, or authorized thereby to render the said supposed judgment, and denying that a copy of the said writ and declaration was served on Thomas K. Brace, or actual notice thereby, of the pendency of said suit, was given to the defendants, or full opportunity afforded them of defending therein; and this they pray may be inquired of by the jury.

The cause came on to argument upon the demurrer to the plea of nil debit, and upon the admission of certain facts in relation to the issues of fact made by the pleadings in the cause. From the transcript of the record in the Maryland judgment, it appears that the suit was commenced on the 10th day of April, in the year 1835; and the declaration is upon a policy of insurance against fire, bearing date the 16th day of October, in the year 1830, and renewed from time to time, according to the provisions in the policy, and continued until the 16th of October, 1834; and the loss is alleged to have occurred on the 24th day of January, in 1834; and from the said record, and the return of the sheriff of Baltimore county, it appears that the writ was served on William Hope, agent of the Ætna Insurance Company, on the 11th day of April, 1835; and that a copy of the writ and declaration was served on Thomas K. Brace, president of the Ætna Insurance Company, on the 15th day April, in the year 1835, and the agency of William Hope, under the power of attorney, set out in the transcript of the record, is admitted, bearing date on the 18th day of March, 1833, giving him full powers to receive proposals for insurance against loss by fire, to act as surveyor of buildings, and insurance thereon to make, by policies signed by the president, and attested by the secretary, and countersigned by the said William Hope. It is admitted that Thomas K. Brace was president of the company, and that service of the writ and declaration was made on him, and the other proceedings had, as set forth in the transcript of the record, and that the court of Maryland had jurisdiction of the subject-matter of the suit in which judgment was rendered. The law of Maryland is also admitted.

Under this state of the pleadings and the admitted facts in the case, the cause must turn principally upon the effect and operation of the Maryland judgment, and the construction to be given to the law of that state regulating proceedings against foreign corporations doing business within the state. Prior to the adoption of the confederation and the constitution of the United States, the several states were considered entirely independent of each other; and the judgments recovered in their respective courts were foreign judgments in every respect, as in any separate and independent government; and whatever changes now exist in this respect must be sought for in the constitution and laws of the United States. The constitution declares that full faith and credit shall be given in each state

to the public acts, records and judicial proceedings of every state, and though congress may prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof; and the act of congress of 1790, passed in execution of this power, declares that judgments in the states shall have the same faith and credit given to them in every court within the United States as they have by law or usage in the courts of the states from whence the record shall be taken. There has been considerable diversity of opinion prevailing in the courts of the different states, with respect to the construction of the constitution and the act of congress upon this subject. Some holding that the act of congress relates only to the mode of authentication, and that the legal import and effect, and obligation of judgments of another state, is still open to be decided by the rules and principles of the common law. Others have held that the terms "faith and credit," as used in the act of congress, mean the same thing as the term "effect," and that this effect being the same in the state where they are used as in the state where the judgments are rendered, they are in all respects like domestic judgments, as to their conclusiveness against the party who is the subject of them.

But whatever diversity of opinion may have existed on this subject, the question in this court would seem to be settled by the cases of Mills v. Duryea, 7 Cranch [11 U. S.] 481, and Hampton v. McConnel, 3 Wheat. [16 U. S.] 234, decided in the supreme court of the United States. The doctrine of those cases is, that the judgment of a state is to have the same credit, validity and effect in every other court in the United States which it had in the state where it was pronounced; and that whatever pleas would be good to a suit thereon in such state, and none other, could be pleaded in any other court in the United States. In the case of Mills v. Duryea, it was held that nil debit was not a good plea to an action founded on a judgment of another state; and it has been supposed by some that this decision went the length of laying down the general doctrine that the plea of nul tiel record was the only proper plea to an action upon a state judgment. But such is not the conclusion to be drawn from that case, but only that nil debit was not a proper plea in that case, but nul tiel record should have been pleaded. "For," say the court, "beyond all doubt the judgment of the supreme court of New York was conclusive upon the parties in that state, for the defendant was arrested and gave bail in the suit;" and there can be no doubt that, where the judgment is conclusive, nul tiel record is the proper plea. But if the record is not conclusive, it is open to such plea as will let in the defence which the party has a right to set up; and it would be competent for the defendant to show that the judgment was obtained by fraud, or that the court in which the judgment was obtained had not jurisdiction of the cause. Such

defence might, in some cases, be set up to a suit upon the judgment in a court of the state in which it was rendered. In the case of Andrews v. Montgomery, 19 Johns. 162, Spencer, C. J., observed, that with the qualifications that the party may show that the judgment was obtained by fraud, or that the state court had not jurisdiction of the person of the defendant, we are bound, by the authority of the case in the supreme court of the United States, to consider a judgment fairly obtained in another state as conclusive evidence of the matter adjudicated; and in the case of Bissell v. Briggs, 9 Mass. 462, Parsons, C. J., in considering the construction to be given to the constitution and law of the United States upon this subject, observes that judgments rendered in any other of the United States, are not, when produced here as the foundation of actions, to be considered as foreign judgments, the merits of which are to be inquired into, as well as the jurisdiction of the court rendering them; neither are they domestic judgments, rendered in our own courts of record, because the jurisdiction of the court rendering them is put in issue, but not the merits of the judgment. That when a record of a judgment of any court of any state is produced as conclusive evidence, the jurisdiction of the court rendering it is open to inquiry; and if it should appear that the court had no jurisdiction of the cause, no faith or credit whatever will be given to the judgment; and that if the court of any state should render judgment against a man not within the state, nor bound by its laws, nor amenable to the jurisdiction of its courts, if that judgment should be produced in any other state against the defendant, the jurisdiction of the court might be inquired into; and if a want of jurisdiction appeared, no credit would be given to the judgment; [3] and the court

---

[3] Such inquiry is always allowable when a foreign judgment, or the judgment of a neighboring state, comes in question (Rose v. Himely, 4 Cranch [8 U. S.] 241, 269, per Marshall, C. J.; Cheriot v. Foussat, 3 Bin. 220; Moren v. Killibrew, 2 Yerg. 376, 379, 380; The Neuva Anna and Liebre, 6 Wheat. [19 U. S.] 193); but to what length is not very clearly defined. In Bank of North America v. McCall, 4 Bin. 371, an objection was started as to the jurisdiction of a court, acting at St. Domingo, which was said not to have been derived from the proper authority; and it was held sufficient that the court was one de facto, deriving its authority from those in whom the power of the country was for the time being vested; and, therefore, it was deemed to have the jurisdiction of a legitimate court. S. P., Ingram's Heirs v. Cocke, 1 Overt. 22. See, per Best, C. J., Yrisarri v. Clement, 2 Car. & P. 223. If the origin of the foreign court does not appear, it seems that it will be presumed legitimate; but where the source of its authority is stated, the tribunal before which its judgment is produced will examine it; and if it be contrary to the usual mode of constituting courts, it shifts the onus probandi upon the party who would sustain the judgment, and it will then be for him to establish that the foreign court was properly organized. See, per Washington, J., Snell v. Faussatt [Case No. 13,138], 3 Bin. 239.

must not only have jurisdiction of the cause but of the parties.

If the judgment has no binding effect or operation, and that appears upon the face of the record, the plea of nil debit may be a good plea. It is the general issue, denying the whole cause of action, and leaves the question of jurisdiction open to inquiry. But it is not important, in the present case, to decide whether the plea of nil debit is a good plea or not; for there can be no doubt that, under the constitution and act of congress, the question of jurisdiction remains open as at common law; and it may be shown by proper evidence, that the court rendering the judgment had no jurisdiction; and the pleadings may be so shaped as to admit such evidence; and if nil debit is not a proper plea for that purpose, the want of jurisdiction may be pleaded specially.

In the case of Shumway v. Stillman, 4 Cow. 292, it was decided by the supreme court of New York, that in an action upon a state judgment, it was competent for the defendant to show, by a special plea, that the court in which the judgment was rendered had no jurisdiction either of the subject-matter or of the person; and in the present case the defendants have plead specially the want of jurisdiction in the Maryland court which rendered the judgment; and from the record itself, it appears that the process to bring the defendants before the court was served on their agent in the city of Baltimore, and a copy thereof delivered to the president of the company in the state of Connecticut; and unless such service of the process was sufficient to bring the party before the court, the judgment was obtained without any notice of the suit being given to the defendants. It is admitted, in the present case, that the Maryland court had jurisdiction of the subject-matter of the suit; but jurisdiction over the person was also necessary in order to sustain the judgment; and to give jurisdiction of the person, due notice of the suit or service of the process must be shown, or the judgment is a nullity, except in cases of proceedings under the statute process of foreign attachment, which is in the nature of a proceeding in rem, and subjects the goods attached to the judgment when recovered. But, in such case, if the goods attached are insufficient to satisfy the judgment, no suit can be sustained upon the judgment for the deficiency, because the defendant, in such case, is not personally amenable to the jurisdiction of the court rendering the judgment. The language of the courts, on the subject of notice to the party in order to give any validity to the judgment, is very strong.[4]

In the case of Thurber v. Blackbourne, 1 N. H. 243, the court say, the common law never recognizes judicial proceedings as foreign judgments, unless rendered by a court of record, upon personal notice given to the defendant, or his appearance to the action. And in Kilburn v. Woodworth, 5 Johns. 37, the court refused to permit such a judgment to be given in evidence; and they say, to bind a person by a judgment when he was never personally summoned or had notice of the suit, would be contrary to the first principles of justice; and numerous other cases might be cited to the same effect. 10 Coke, 70; 1 Conn. 45; 9 Mass. 462; Kirb. 119. It may, therefore, I think, be assumed as the settled doctrine of the law, that a judgment either strictly foreign or coming within the operation of the constitution and law of

[4] In Obicini v. Bligh, 8 Bing. 335, a suit was instituted in England to recover damages awarded by the vice-admiralty of the Island of Malta; and it was held, that the decree, in order to be evidence of indebtedness, must show expressly, and not by mere inference, that the defendant was brought within the jurisdiction of the vice-admiralty court, and that the court where the suit was pending would not presume it. So, also, in Thurber v. Blackbourne, 1 N. H. 242, 246, where debt was brought, in New Hampshire, upon a judgment of the common pleas of Rhode Island, held, that inasmuch as it did not appear by the record that the defendant had personal notice of the suit, or appeared to the action in the court where the judgment was pronounced, the judgment must be regarded as obtained without jurisdiction, for these facts would not be presumed. In Bradshaw v. Heath, 13 Wend. 407, the plaintiff, Mary Bradshaw, brought ejectment in New York, for dower, and in answer to proof on the part of the defendant, that the plaintiff, previous to the marriage in virtue of which she claimed dower, was a married woman, and that her first husband was still alive, the plaintiff produced a record of the superior court of Connecticut, containing a sentence of divorce, on her petition, from her first husband. The petition, as stated in the record, alleged that the first husband had deserted the petitioner, and had ever since been to parts unknown. No appearance on the part of the husband was shown by the record, nor did it state that he was served with process, or had notice of the proceeding; but, on the contrary, the adjudication was alleged to have been made on hearing "the plea and evidence produced by the plaintiff." The defendant proved that the first husband, at the time of the presentation of the petition, and of the granting of the divorce, was an inhabitant of the state of New York; and the court held, that although the record of a court of competent jurisdiction of another state, granting a divorce, is conclusive, and entitled to full faith and credit, yet it is so only as to matters clearly and distinctly stated in it, and not as to those which are merely inferrible by argument from the judgment; that in the particular case, the record of divorce was no evidence of the jurisdiction of the court over the person of the defendant in those proceedings, because no fact was stated giving jurisdiction; and if jurisdiction was inferrible at all, it was only so by argument from the judgment; and consequently, that the presumption under the circumstances was against the validity of the decree. See Harding v. Alden, 9 Greenl. 140 et seq. Whether jurisdiction be founded upon the person being within the territory, or the property being there, the judgment will be deemed valid, so far as that jurisdiction could legitimately extend; but no farther. Thus, a very common course, in many of the United States and in many other countries, is to proceed against non-residents, by an arrest or attachment of their property within the territory. Judgment obtained upon process of this kind, will generally bind the property so arrested or attached; for to that extent the court has or can have jurisdiction. But such judgment will not be regarded by neighboring states or other nations as evidence of indebtedness or as operative in any measure in personam; and for this very obvious reason, viz., that except so far as

the United States, obtained without notice to the defendant, or his appearing in any manner to answer to the suit, can have no validity or binding effect and operation. And the inquiry then is, whether the Maryland judgment, upon which the present suit is founded, is a judgment of this description. It was admitted on the argument, that the service of a copy of the writ and declaration upon the president of the Etna Company in the state of Connecticut, could have no legal effect; and the notice to the defendants must, therefore, depend upon the service of the process upon their agent in the city of Baltimore. And the effect and operation of such service must depend upon the Maryland law set up in the replication; for, independent of that law, this service was a mere nullity. The powers of the agent did not embrace any authority to accept or acknowl-

edge such service, or to appear and answer to any suit instituted against the company in the state of Maryland. He was, therefore, in this respect, a mere stranger to the defendants, and the service of the process on him, was no more binding or operative than if made upon any other person; and I think the Maryland law cannot be applied to the present case so as to give any validity to the service of the process on the agent. This law, in its application to the proceedings and judgment in question is entirely retrospective; the law was passed in March, 1835. The loss for which the judgment was obtained happened in January, 1834, and the policy expired in October of the same year; and the Maryland suit was commenced in April, 1835. From these dates of the several transactions, the law is in some measure obnoxious to the inference that it was passed

---

the property attached is concerned, there is and can be no jurisdiction, no power of adjudication. Picquet v. Swan [Case No. 11,134]; Story, Confl. Laws, 461; Kilburn v. Woodworth. 5 Johns. 37; Pawling v. Willson. 13 Johns. 192; Serg. Attachm. 112–114, et seq.; M'Clenachan v. M'Carty. 1 Dall. [1 U. S.] 375; Phelps v. Holker, Id. 264; Robinson v. Ward's Ex'rs. 8 Johns. 86; Borden v. Fitch, 15 Johns. 121; Hall v. Williams, 6 Pick. 232; Betts v. Death, Add. 265; Fenton v. Garlick, 8 Johns. 194. 197; Flower v. Parker [Case No. 4,891]. per Story, J.; Wilson v. Graham [Id. 17,804]. per Washington, J.; Bissell v. Briggs, 9 Mass. 462; Kibbe v. Kibbe. Kirb. 119; Dennison v. Hyde, 6 Conn. 508; Aldrich v. Kinney, 4 Conn. 380. 387; Earthman's Adm'rs v. Jones. 2 Yerg. 484; Hoxie v. Wright, 2 Vt. 263; Rogers v. Coleman, Hardin. 413; Newell v. Newton. 10 Pick. 470, 472; Starbuck v. Murray, 5 Wend. 148; Holbrook v. Murray. Id. 161; Bradshaw v. Heath, 13 Wend. 407. 416; Bates v. Delavan, 5 Paige, 299, 305; Armstrong v. Harshaw. 1 Dev. 188. So as to judgments or decrees in other cases. obtained against persons resident abroad without notice to them, and an opportunity afforded of defending. See the above cases. Also, Bellows v. Ingham, 2 Vt. 576, 577; Woodward v. Tremere, 6 Pick. 354; Newell v. Newton, 10 Pick. 472; Bartlett v. Knight, 1 Mass. 401; Cone v. Cotton, 2 Blackf. 82; Moren v. Killibrew, 2 Yerg. 376; Thurber v. Blackbourne, 1 N. H. 242; Bradshaw v. Heath, 13 Wend. 407; Hart v. Lodwick, 8 La. 164; Spencer v. Sloo, Id. 290. And in order that the judgment under these circumstances may be rendered binding upon the defendant in personam, the notice must be personally served upon him. This will be found sustained by all the cases; and where notice was given by publication in the newspapers, as is frequently done in certain chancery proceedings in several of the states, to bring in some of the parties who were absent, held, that a decree, pursuant to notice of that character, as against such absent defendants, was no evidence of indebtedness. Miller's Ex'rs v. Miller, 1 Bailey, 242. See Moren v. Killibrew, 2 Yerg. 376; Cone v. Cotton, 2 Blackf. 82; Rogers v. Coleman, Hardin. 413; Warren v. Hall's Ex'r. 10 La. 377. The notice must, moreover, be served upon the defendant, while he is within the jurisdiction of the sovereignty under which the court acts; for no sovereign has a just right to issue such notice to the citizen of another state or country, and thereby draw the party from his own proper forum ad alium examen. Picquet v. Swan, supra; Dunn v. Dunn, 4 Paige, 425; Fenton v. Garlick, 8 Johns. 194, 197; Flower v. Parker, per Story, J.; Wilson v. Graham, per Washington. J. [supra]; Woodward v. Tremere, 6 Pick. 354; Harrod v. Barretto, 1 Hall, 155; Kilburn v. Woodworth, 5 Johns. 37; Arnold v. Tourtellot, 13 Pick. 172; Adams v.

Rowe, 2 Fairf. [11 Maine] 98. But if the party, in any of these instances, chooses to appear and contest the merits, thereby waiving his personal immunity, and submitting to the jurisdiction of the court, the judgment would then doubtless bind him personally, and be entitled to the same measure of respect with the judgment of a neighboring state or a foreign country, as the case may be, obtained in the ordinary mode. Picquet v. Swan [Case No. 11,134]; Flower v. Parker: Hall v. Williams. 6 Pick. 237; Shumway v. Stillman. 6 Wend. 447. 4 Cow. 292; Starbuck v. Murray, 5 Wend. 148; Hoxie v. Wright. 2 Vt. 262; Bellows v. Ingham. Id. 575; Mayhew v. Thatcher. 6 Wheat. [19 U. S.] 129; Wheeler v. Raymond, 8 Cow. 311; Price v. Higgins. 1 Litt. (Ky.) 276; Moore v. Spackman. 12 Serg. & R. 287. See, also, Bradshaw v. Heath. 13 Wend. 407. Otherwise, however. it has been said in cases of foreign attachments, where the defendant has merely appeared to protect his property. Semble, Bissell v. Briggs, 9 Mass. 469, per Parsons, C. J.; Pawling v. Willson, 13 Johns. 207. But, in Starbuck v. Murray, 5 Wend. 159, Marcy, J., delivering the opinion after referring to the above case of Bissell v. Briggs, lays down the law as follows: "The court would not, in such a case, I concede, have jurisdiction over the defendant's person for any other but the direct objects of the proceedings; and so far as those were concerned, he would be subjected to the authority of the court. If a citizen of one state should go into another to claim property seized on attachment, and subject the attaching creditors to costs and expenses, which, in the due course of the proceedings, should be adjudged to them by a court of competent authority, will it be pretended that he could resist the payment of these costs on the ground that he was not subject to the jurisdiction of the court? For all the fair and direct objects of the suit, he was within its jurisdiction. So if the proceedings were not in rem. but the property of the defendant was attached to compel him to appear and answer to proceedings in personam, and he did in fact appear and litigate the cause with the plaintiff, he could not be heard to question the jurisdiction of the court over his person. I do not think Chief Justice Parsons intended to say more than this, that when a court had the jurisdiction of a defendant for one purpose. it could not legally bind him by a judgment or sentence in a distinct and different matter." See Moore v. Spackman, 12 Serg. & R. 287. If the party, by an act of lawless violence on the part of a few citizens of a particular state, is seized and brought within its jurisdiction from another state. he may, nevertheless, be subjected to the jurisdiction of the courts of the state into which he is so brought. State v. Smith, 1 Bailey, 283. See same case before the chancellor, Id. 290, note a.

to meet the very case. But this can form no objection to it if the case can be brought within it; and the abstract justice of the law as applicable to subsequent cases, cannot be questioned. The defendants, as a body corporate, could have no right to establish themselves, or transact business in the state of Maryland, otherwise than according to the provision of the laws of that state. The provision in the constitution of the United States, "that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," can not be applied to corporations; and the state of Maryland had a right to exclude the corporation from transacting business in that state. And if the defendants, after the passage of that law, had continued underwriting policies in that state, they would be presumed to do it upon the terms and conditions of the act; and as to all causes of action thereafter arising. would subject themselves to prosecution in the mode pointed out by the act. This law may be considered as a kind of quasi incorporation of insurance companies which have not been chartered by the state; and if such companies exercise franchises there, it is just and reasonable that they should subject themselves to prosecutions for losses, in the courts of that state, and will be deemed to have assented to the mode provided by the act for instituting suits for such losses. But the law in question, although it purports upon its face to have a retrospective operation, cannot be considered as having such effect and operation. It is a sound general principle that no statute ought to have a retrospective effect. It is the general rule that a statute takes effect from its date, when no time is fixed; and it cannot, upon sound principles, be admitted that a statute shall, by any fiction or relation, have any effect before it was actually passed. A retroactive statute partakes, in its character, of the mischiefs of an ex post facto law, and when applied to contracts or property, would be equally unjust and unsound in principle as ex post facto laws when applied to crimes and penalties. 1 Kent. Comm. 426; [Matthews v. Zane] 7 Wheat. [20 U. S.] 164; 7 Johns. 477; The Ann [Case No. 397].

Judgment for the defendant.